UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHIRLEY M,[1] | ) |
|         Plaintiff, | ) |
| v. | ) No. 1:22-cv-02224-MJD-TWP |
| KILOLO KIJAKAZI, | ) |
|         Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Shirley M. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for SSI in May of 2020, alleging an onset of disability as of May 16, 2018. [Dkt. 12-2 at 16.] Claimant's application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Monica LaPolt ("ALJ") on April 27, 2022. *Id*. On May 11, 2022, ALJ LaPolt issued her determination that Claimant was not disabled. *Id.* at 62. The Appeals Council then denied Claimant's request for

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

review on September 20, 2022. *Id.* at 2. Claimant timely filed her Complaint on November 17, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

2

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III. ALJ Decision

ALJ LaPolt first determined that Claimant had not engaged in substantial gainful activity since the application date of May 28, 2020. [Dkt. 10-2 at 16.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative joint disease of the bilateral knees; degenerative joint disease of the bilateral hips; and obesity." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id*. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally operate foot controls bilaterally. She can occasionally be exposed to slippery, uneven surfaces. She can never be exposed to unprotected heights. She can have

      no more than occasional exposure to extremes of humidity and concentrated airborne irritants, including, but not limited to, fumes, odors, dusts, and gases.

*Id.* at 19.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 21. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 22. Accordingly, ALJ LaPolt concluded Claimant was not disabled. *Id.* at 23.

### IV.  Discussion

Claimant testified that she cannot work due to severe impairments of degenerative joint disease of the knees and hips, as well as asthma. [Dkt. 14 at 2.]  Specifically, she testified that she can stand in place for thirty minutes before feeling pain in her hips and knees, and can walk for about ten minutes before needing to take a break. [Dkt. 12-2 at 43.] Further, in an office-style chair, Claimant testified that she can sit for about 20 minutes before having to get up because of pain from a machine in her left hip, and knee stiffness when it is bent for too long. *Id*. at 45.

In arriving at her determination of non-disability, the ALJ evaluated Claimant's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically  determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective

symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individual's own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

      The ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where she fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse credibility finding with specific reasons 'supported by the

record.'" *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin,* 775 F.3d 929, 937 (7th Cir. 2015)).

In this case, after summarizing Claimant's hearing testimony about her symptoms and the medical evidence of record, the ALJ explained her subjective symptom evaluation as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 12-2 at 20.] The entire "explanation" given by the ALJ is as follows:

> The claimant's body mass index has generally been in the low-30s (see e.g., C6F/27; C12F/14; C13F/17). Physical exams, as well as reviews of systems and medical imaging, have generally been largely negative and have generally included no findings of consistent significant gait problems with hand-held assistive device use except for a few months following the left knee replacement surgery, no acute distress, alertness, and normal motor and sensation, although there have been some positive findings, such as an antalgic gait and left knee tenderness to palpation, at some appointments; further, the medical records document little to no exacerbations of the claimant's symptoms requiring emergency treatment or hospitalization (see e.g., C9F/56, 151-54, 169; C11F/17; C13F/22).
>
> For example, left knee imaging in July 2020 revealed moderate tricompartmental degenerative changes, and the claimant underwent a total left knee arthroplasty in September 2020, as discussed below (C2F/2-3). At a postoperative follow-up appointment in January 2021, the claimant reported that she was happy overall with the results of the left knee replacement and that she had returned to normal activities without difficulty; exam findings included only a slightly antalgic gait, average swelling, no calf tenderness, good stability, and 0 – 100 range of motion (C13F/22). Physical exam findings in April 2021 included no acute distress, an antalgic gait, and with respect to the left knee: no tenderness to palpation, full flexion and extension, no soft tissue swelling, and 5/5 strength (C10F/3). During an orthopedic appointment in October 2021, the claimant reported persistent left knee pain since the September 2020 surgery, which had worsened after a fall two months earlier; physical exam findings included a mildly antalgic gait, significant tenderness to palpation over the medial joint line, minimal tenderness to palpation about the lateral joint line, 0 – 115 degrees range of motion, and intact motor and sensation in the lower extremities (C13F/7). The claimant's left knee revision

surgery in February 2022, discussed below, was completed without complication, and she was discharged in good condition (C12F/3).

Regarding treatment and medications, the claimant's treatment has included multiple medications, physical therapy, a hinged knee brace, and a left knee total arthroplasty in September 2020 with subsequent revision surgery in February 2022 due to persistent pain and global instability, which based on the above and activities of daily living, seem to have fairly controlled and stabilized her symptoms; no medication side effects were noted in a disability report (claimant testimony; C8E/4-5; C6F/78; C9F/154; C12F/44, 50). The medical records do not show that she consistently complained of medication side effects at medical appointments and asked about alternative treatment. In her June 2020 function report, the claimant did not report using any assistive devices, such as a walker or cane, other than a brace and prophylactic incontinence device (C3E/8). A cane or other hand-held ambulation assistive device is not medically necessary. The medical records do not document cane, walker, or other hand-held ambulation assistive device use except for a few months following the claimant's knee surgery; no assistive device use was noted at a postoperative follow-up appointment in January 2021 (see e.g., C9F/56, 151-54; C13F/22)

The claimant reported that she has lived with her 14-year-old nephew since February 2022 (she reported living alone prior to then) and that she could do some activities of daily living, including driving, preparing simple meals, personal care tasks with no problems, and household chores (e.g., laundry), albeit with some limitations, such as assistance with house cleaning (claimant testimony; C3E).

[*Id*. at 19-20.]

Thus, the primary reason the ALJ gives for discrediting Claimant's subjective symptom allegations is that Claimant's "treatment . . . includ[ing] multiple medications, physical therapy, a hinged knee brace, and a left knee total arthroplasty in September 2020 with subsequent revision surgery in February 2022 due to persistent pain and global instability, . . . based on the above and activities of daily living, seem to have fairly controlled and stabilized her symptoms."  [*Id*. at 20.]  There is simply no basis for this finding in the record.  As was acknowledged by everyone at the hearing, Claimant was still recovering from her revision surgery at the time of the hearing; it was too soon to determine the extent to which it was successful.  The record contains no records subsequent to the February 2022 revision surgery.  But what is abundantly clear is that

Claimant's prior surgery **did not** control and stabilize her symptoms; that surgery failed, which is what necessitated the revision surgery. *See* [Dkt. 12-10 at 38] (noting "failed left total knee arthroplasty due to global instability"). Indeed, the record shows that Claimant underwent her total knee replacement surgery in September 2020. As of January 15, 2021, she was still recovering from that surgery. A note from a visit that date states that her pain was improving, she was making progress with her range of motion, and that she had "returned to normal activities without difficulty and [was] overall happy with the result" of the surgery. [Dkt. 12-10 at 127.] However, at a visit with her orthopedic physician on April 21, 2021, after a fall in which Claimant injured her ankle, it was noted that Claimant reported "having some knee pain more so across the anterolateral aspect of her left knee where she had previously undergone total knee arthroplasty." [Dkt. 12-9 at 302.] On October 29, 2021, Claimant returned to her orthopedic PA, who noted that Claimant "reports persistent pain in the knee since surgery but acutely worsened when she fell 2 months ago and twisted left knee getting out of her truck. Pain located diffusely about the knee and worse with walking. Feels like it is giving out on her and clicking." [Dkt. 12-10 at 111.] Examination revealed "trace effusion[,] significant tenderness to palpation . . . over the medial joint line along MCL, minimal TTP about lateral joint line. Range of motion between 0 and 115 degree. No extensor lag or flexion contracture. 5 degree opening in full extension, 10-15 opening in mid flexion with pain, 5 mm A/P translation in flexion. negative patellar grind." *Id.* Claimant was referred to physical therapy. On November 21, 2021, the physical therapist noted "instability in her left knee related to global weakness of her left leg. Weakness noted in quadriceps, hip flexion and abduction, pain in left knee, and difficulty walking." *Id.* at 19-20. On December 29, 2021, the orthopedic physician noted that he "suspect[ed] the patient has developed flexion and mid flexion instability" for which revision

surgery was recommended. [Dkt. 12-10 at 107.] It is impossible to reconcile this medical history with the ALJ's conclusory finding that Claimant's treatment "seem[s] to have fairly controlled and stabilized her symptoms."

The ALJ further points to Claimant's activities of daily living as support for this finding, but the ALJ fails to explain how the limited activities she notes ("driving, preparing simple meals, personal care tasks with no problems, and household chores (e.g., laundry), albeit with some limitations, such as assistance with house cleaning," [Dkt. 12-2 at 21], are inconsistent with Claimant's subjective symptoms allegations. *Cf. Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why doing these household chores was inconsistent with [the claimant's] description of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [the claimant's] daily activities reveal any exaggeration of [the claimant's] limitations."); *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (same).

An ALJ is required to "'provide a logical bridge between the evidence and [her] conclusions.'" *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "[A]s with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). By failing to confront the actual evidence of record regarding Claimant's knee impairment, the ALJ failed to do so here. Remand is therefore required.

Claimant also argues that the ALJ erred at Step Four by setting forth an RFC assessment that was legally insufficient because she failed to explain how the evidence supported her

conclusions. On remand, the ALJ shall reevaluate the RFC determination in light of her reevaluation of the subjective symptoms.

## V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  1 DEC 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.